## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| BONITA RENAE BATTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:18-cv-01361-SGC |
| | ) | |
| OAK INVEST GROUP CORP., | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER[1]

This matter arises out of a May 2018 traffic accident on Interstate 22, north of Birmingham, Alabama. (Doc. 32 at 2).[2] Defendant Oak Invest Group Corporation has moved for partial summary judgment, and that motion is fully briefed and ripe for adjudication.[3]  (Docs. 64, 69, 71-72). As explained below, Oak Invest's motion is due to be granted.

---

[1] The parties have consented to dispositive magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Doc. 10).

[2] Citations to the record refer to the document and page numbers assigned by the court's CM/ECF electronic document system and appear in the following format: (Doc. __ at __).

[3] Oak Invest and co-defendant Ernel Estime were initially represented by the same counsel. (Doc. 3). On April 24, 2019, counsel moved to withdraw as counsel for Estime because Estime was no longer cooperative or communicative. (Doc. 24). Following a hearing at which Estime did not appear, as well as further attempts to contact Estime and notify him of counsel's motion to withdraw, that motion was granted on July 22, 2019. (Doc. 39).

## I.     SUMMARY JUDGMENT STANDARD

Under Rule 56 of the *Federal Rules of Civil Procedure*, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, the non-moving party must go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *See id.* at 324.

The substantive law identifies which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome of the case will preclude summary judgment. *Id.* All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If

the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

## II.     MOTION TO STRIKE CONSTRUED AS OBJECTIONS

Oak Invest objected to and moved to strike two exhibits Batton included in her opposition to summary judgment: (1) the results of a post-accident urinalysis for controlled substances that reported Estime tested positive for marijuana metabolites (Doc. 69 at 151); and (2) a compilation of documents reflecting Estime's alleged criminal history (Doc. 69 at 60-149). Per the advisory committee's note to Rule 56(c)(2), Because motions to strike summary judgment evidence are no longer necessary, the court will treat the defendant's motion to strike as an objection to the evidence in ruling on its summary judgment motion. *See* Fed. R. Civ. P. 56 advisory committee's note to 2010 amendments (emphasis added).

The 2010 advisory committee's note to Rule 56(c)(2) provides: "[an] objection [under Rule 56(c)(2)] functions much as an objection at trial, adjusted for the pretrial setting. *The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated.*" *Id.* (emphasis added). Because she did not respond to Oak Invest's filing, and the time to do so has expired (*see* Doc. 11 at 5), Batton has failed to carry her burden to demonstrate the material is admissible now or could be admissible at trial. For this reason alone, Oak Invest's objections may be sustained. But Oak Invest is entitled

3

to summary judgment even considering these documents. The court will separately address the relevance and admissibility of the urinalysis and criminal history documents in its substantive analysis of Batton's claims.

### III.   FACTS

#### A. Oak Invest hires Estime

Oak Invest is a long-distance freight transportation company that hired Estime as a contract driver in late April 2018, approximately two weeks before Estime's collision with Batton. (Doc. 69 at 34). Before hiring Estime, Oak Invest confirmed he held a valid commercial driver's license ("CDL") and medical card, and it questioned him about his driving experience. (Doc. 64-5 at 3). Oak Invest's insurer conducted its own background check of Estime, obtaining a motor vehicle report ("MVR") and a pre-employment screening report ("PSR"). (Doc. 64-5 at 3).

Estime's MVR contained information for the prior three years, and it reflected the following driving infractions: (1) failure to pay a traffic fine in 2015; (2) failure to keep proper insurance in 2016; and (3) a seat belt violation in 2018. (Doc. 64-5 at 7). The PSR showed an infraction for driving a commercial motor vehicle ("CMV") while disqualified in 2015. It also included what Oak Invest describes as common, minor inspection violations relating to truck malfunctions and driver paperwork errors. (Doc. 64-5 at 4, 10-11). Oak Invest was not aware Estime had any driving or

criminal history beyond what the MVR and PSR reported. (Doc. 64-5 at 4).[4] In the two weeks he drove for Oak Invest, it had no issues with Estime and did not issue any discipline or other warning to him. (Doc. 69 at 42).

### B. The May 2018 collision

On May 10, 2018, Batton drove eastbound on I-22 in the middle lane, and Estime drove Oak Invest's tractor trailer behind her. (Doc. 64 at 2). Estime moved into the left lane to pass Batton, driving alongside her for some time. (Doc. 64 at 2). When Estime moved his truck back into the middle lane, Batton's vehicle was roughly aligned with the gas tank of the cab, and Estime collided with Batton's vehicle. (Doc. 64 at 2). Batton's vehicle was damaged and came to rest on the right shoulder of the interstate. (Doc. 64 at 2). Estime pulled his truck to a stop into the median on the left side of the roadway. (Doc. 64 at 2).

After the accident, Estime asked if Batton had been beside him, apologized to her, and said he didn't see her. (Doc. 64-1 at 20). According to Batton, Estime, "kept touching his waist and looking up and down the street and, you know, like looking back and forth and touching something." (Doc. 64-1 at 21). Batton found Estime's behavior "intimidating" and "frightening." (Doc. 64-1 at 22).

---

[4] Batton agrees Oak Invest was not aware of Estime's driving or criminal history other than what was included in the MVR and PSR, but she argues Oak Invest should have conducted a more thorough background check. (Doc. 69 at 4).

Alabama State Trooper Christopher Nuun responded to the accident and interviewed Batton, Estime, and a witness. (Doc. 64-2 at 6). Nuun thought Estime's behavior was normal, and he did not suspect Estime was under the influence of drugs or alcohol. (Doc. 64-2 at 7). Nuun did not issue any citations in connection with the accident. (Doc. 64-2 at 8).

A few hours after the collision, Estime submitted to a urinalysis, which screened him for the presence of several illegal substances. (Doc. 69 at 151). The urinalysis detected the presence of marijuana metabolites in Estime's urine. (Doc. 69 at 151). After learning about the positive drug test, Oak Invest asked Estime if he was intoxicated during the collision, which Estime denied. (Doc. 69 at 52).

Oak Invest uses a GPS program to monitor its drivers. (Doc 69 at 46-47). A printout of Estime's GPS tracking for May 10, 2018, shows four symbols indicating caution. (Doc. 69 at 153). Oak Invest's corporate representative could not interpret the caution symbols but suggested they could relate to mechanical issues, hours of service, alerts, speed, or anything related to the GPS system. (Doc. 69 at 47).

Batton filed this lawsuit on July 18, 2018, against both Estime and Oak Invest. (Doc. 1-1 at 3). She seeks damages from Oak Invest on theories of (1) negligence, (2) wantonness, (3) negligent/wanton hiring, training, and supervision, and (4) *respondeat superior*. (Doc. 32).

## IV.   DISCUSSION

Oak Invest moves for summary judgment on Batton's claims for wantonness (Count II), negligent/wanton hiring, training, and supervision (Count III), and *respondeat superior* (Count IV). (Doc. 64 at 1). Substantive Alabama law governs these claims, which are addressed in turn.

### A. <u>Count II - wantonness</u>

Oak Invest argues there is no evidence Estime behaved wantonly when he changed lanes and hit Batton's car. (Doc. 64 at 6). Batton concedes Estime was not wanton in the driving maneuvers he executed that resulted in the collision; instead, she suggests Estime was intoxicated at the time of the accident. (Doc. 69 at 9).

Alabama law defines wantonness as "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others." Ala. Code § 6-11-20(b)(3). As explained by the Alabama Pattern Jury Instructions, a defendant's conduct is wanton if he "consciously acts or fails to act with a reckless or conscious disregard of the rights or safety of others, and [] is aware that harm will likely or probably result."  2 Ala. Pattern Jury Instr. Civ. § 29.00 (3d ed.). As explained by the Alabama Supreme Court:

> Wantonness is not merely a higher degree of culpability than negligence. Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability. Implicit in wanton, willful, or reckless misconduct is an acting, with knowledge of danger, or with consciousness, that the doing or not doing of some

7

act will likely result in injury.

*Carter v. Treadway Trucking, Inc.,* 611 So. 2d 1034, 1035 (Ala. 1992) (quotation marks omitted) (*overruled on other grounds by Robertson v. Gaddy Electrical and Plumbing, LLC*, 53 So. 3d 75 (Ala. 2010)). Of course, a plaintiff claiming wantonness need not prove the defendant had a "specific design or intent to injure" him. *Joseph v. Staggs*, 519 So. 2d 952, 954 (Ala. 1988). As this court has noted, in the context of a traffic accident, a plaintiff must show the defendant was driving "in a manner likely to result in injury. . . .  However, an error in judgment is insufficient to demonstrate that an alleged tortfeasor has acted in a manner likely to result in injury." *Stephens v. Snow*, No. 16-cv-00442-SGC, Doc. 24 at 1 (N.D. Ala. *entered* Sept. 25, 2017).

Alabama courts presume a defendant did not consciously engage in self-destructive behavior – behavior that would likely or probably cause harm not only to others but also to the defendant. *See Ex parte Essary*, 992 So. 2d 5, 12 (Ala. 2007). A plaintiff may overcome this presumption by showing the defendant's judgment was impaired (e.g., by the consumption of alcohol) or his conduct was "so inherently reckless that [a court] might otherwise impute to [the defendant] a depravity consistent with disregard of instincts of safety and self-preservation." *Id.*

Batton argues a reasonable juror could conclude Estime was driving while intoxicated, and therefore behaved wantonly, based on three pieces of evidence: (1)

8

Estime had a history of drug use and criminal drug charges; (2) Estime's urinalysis was positive for marijuana metabolites; and (3) Estime behaved in a "bizarre" and "paranoid" manner after the collision. (Doc. 69 at 10). Batton argues this evidence, taken together, constitutes "substantial evidence tending to demonstrate that Estime had marijuana in his system when this accident occurred." (Doc. 69 at 10).

### i. Estime's history of drug usage and criminal drug charges

First, the *Federal Rules of Evidence* prohibit the use of Estime's history of drug use and criminal drug charges to prove Estime was intoxicated at the time of the collision. *See* Fed. R. Evid. 404(a)(1), (b)(1). Evidence of a person's crime, wrong, or act may not be used to prove that "person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). This type of evidence may be used for other purposes, such as to demonstrate motive, opportunity, intent, etc. *See* Fed. R. Evid. 404(b)(2). But here, Batton uses Estime's drug history to argue a reasonable juror could find Estime was intoxicated when he collided with Batton. She may not do so. Because this evidence would be inadmissible at trial to prove Estime's intoxication, the court will not consider it for purposes of summary judgment.

### ii. The urinalysis

Batton claims the urinalysis demonstrates Estime had marijuana in his system during the collision. In response, Oak Invest argues the urinalysis is irrelevant and

unfairly prejudicial because it does not establish Estime was impaired at the time of the accident. (Doc. 71 at 2). Oak Invest cites several cases rejecting the results of a toxicology screen to demonstrate intoxication at a particular point in time. (Doc. 71 at 2-3). Most of those cases involved expert testimony about the results of the screen or the effects of marijuana on the body – evidence which would be more probative than the one-page report in this case. *See Indem. Ins. Co. of N. Am. v. Pettit*, No. 04-CV-23-B, 2006 WL 8432396, at *4 (D. Wyo. Apr. 10, 2006); *Pennington v. King*, No. CIV.A. 07-4016, 2009 WL 415718, at *6 (E.D. Pa. Feb. 19, 2009); *Battle v. Gold Kist, Inc.*, No. 3:06-CV-782-K-32TEM, 2008 WL 4097717, at *8 (M.D. Fla. Sept. 2, 2008); *see also Bieberle v. United States*, 255 F. Supp. 2d 1190, 1199 (D. Kan. 2003) (unclear whether the urinalysis was offered via expert testimony).

It appears Alabama courts have not directly addressed this issue, but the Alabama Court of Civil Appeals has considered a related question. *Carter v. Haynes*, 267 So. 3d 861 (Ala. Civ. App. 2018). In *Carter*, the defendant admitted he had used methadone and marijuana several hours before the collision, but the trial court excluded this testimony. *Id.* at 863. There was no evidence the defendant had been driving erratically before the accident; the police officer who responded to the scene did not observe signs of impairment; and the defendant was not arrested for driving under the influence. *Id.* at 865. Consequently, the court held there was no evidence of a causal relationship between the accident and the defendant's drug use six hours

before the accident, and it affirmed the trial court's exclusion of the defendant's drug use. *Id.* at 867.

The relevant question is not whether Estime "had marijuana in his system" at the time of the accident; instead, the issue is whether Estime was *impaired* at the time of the accident. Here, the urinalysis reflects a positive result for the presence of marijuana metabolites. While this does show Estime used marijuana at some point before the test, it does not establish any probability that Estime was impaired at the time of the collision, nor that he used marijuana on the day of the collision. The urinalysis does not reflect the presence of any specific marijuana metabolite, such as THC, the known psychoactive parent drug, nor does it reflect a specific quantity of metabolites. It sheds no light on the expected effects of marijuana metabolites on Estime's driving abilities. And there is no expert testimony in the record to establish any of these factors.

The evidence here is less probative of Estime's alleged impairment than the evidence the *Carter* court excluded on this same basis. In *Carter*, the defendant admitted using marijuana six hours before the collision. Here, there is only evidence of marijuana use at some point before the day of the accident, and the supplemental evidence of intoxication Batton submits (addressed below) is similarly unpersuasive.

Oak Invest is correct – because the urinalysis does not prove Estime was intoxicated at any given point, it cannot prove he was impaired at the time of the

collision. The urinalysis is irrelevant and should be excluded. Fed. R. Evid. 401, 403. The urinalysis should also be excluded because it would be unfairly prejudicial – it could mislead and confuse a jury given that it does not establish intoxication at a given point in time. Fed. R. Evid. 403.

### iii. Estime's post-collision behavior

Finally, Batton's observations of Estime's behavior do not tend to demonstrate Estime was intoxicated. First, Batton did not characterize Estime's behavior as "bizarre" or "paranoid" during her deposition; instead, the quoted testimony came during an exchange in which Batton described Estime's behavior as "intimidating" and "frightening." (Doc. 64-1 at 20-22). Looking up and down the street and touching something is not substantial evidence Estime was intoxicated. Even combined with the urinalysis, this behavior does not demonstrate intoxication.

Second, and more telling, no witness has testified about any other signs of intoxication. *See Carter*, 267 So. 3d at 865. Batton does not claim Estime was driving erratically before the accident. No witness claims to have smelled marijuana or observed drug paraphernalia. No one testified Estime had bloodshot eyes, abnormally slow or slurred speech, or stumbled as he walked. Instead, the officer who responded to the accident thought Estime's behavior was normal. He did not suspect Estime was under the influence of drugs or alcohol, and he did not arrest Estime for driving under the influence. *See id.*

Batton relies solely on her suggestion Estime was intoxicated to support her wantonness claim. As explained above, there is not substantial evidence Estime was impaired at the time of the accident, which is required to overcome the presumption that Estime did not consciously engage in self-destructive behavior. *See Craft v. Triumph Logistics, Inc.*, 107 F. Supp. 3d 1218, 1222 (N.D. Ala. 2015). Because Batton cannot prove Estime behaved wantonly, her wantonness claim against Oak Invest under *respondeat superior* also fails. *See Jones Exp., Inc. v. Jackson*, 86 So. 3d 298, 304–05 (Ala. 2010) ("[A]n employer could be liable for the intentional torts of its agent if the employer participated in, authored, or ratified the wrongful acts, but [] to prove such liability one must demonstrate, among other things, *the underlying tortious conduct of an offending employee*.") (internal quotation marks and punctuation omitted) (emphasis in original).

For the foregoing reasons, Batton has not submitted substantial evidence showing a genuine issue of material fact on her claim of wantonness. Accordingly, Oak Invest is entitled to summary judgment on this claim.

### B. Count III – negligent and wanton hiring, training, and supervision

Oak Invest argues it is entitled to summary judgment on Count III because Batton cannot prove (1) Estime was an incompetent driver, or (2) Oak Invest knew, or should have known, Estime was incompetent. Batton agrees Oak Invest is entitled to summary judgment on her negligent/wanton training claim because there is no

question of material fact about Oak Invest's training of Estime. (Doc. 69 at 9). But she maintains that because Oak Invest admitted an applicant's criminal history is relevant to whether he should be hired, Oak Invest should be liable for failing to more thoroughly investigate Estime.

To establish a claim for negligent or wanton hiring and supervision in Alabama, a plaintiff must show the employee wrongdoer was incompetent. *Halford v. Alamo Rent-A-Car, LLC*, 921 So. 2d 409, 412 (Ala. 2005); *Johnson v. Brunswick Riverview Club, Inc.*, 39 So. 3d 132, 140 (Ala. 2009). In Alabama, incompetence is the "state or fact of being unable or unqualified to do something." *Halford*, 921 So. 2d at 415. Alabama courts measure a driver's competence "by the driver's demonstrated ability (or inability) to properly drive a vehicle." *Id.* at 413–14. Additionally, "[n]egligence is not synonymous with incompetency. The most competent may be negligent. . . . *But one who is habitually negligent may on that account be incompetent.*" *Pritchett v. ICN Med. All., Inc.*, 938 So. 2d 933, 941 (Ala. 2006) (emphasis in original) (internal citations and quotations omitted).

Batton submits what appear to be Florida court records and a LexisNexis report of Estime's criminal history dating back to 1996 – more than twenty years before Oak Invest hired Estime. (Doc. 69 at 81-149). These documents are hardly a model of clarity, and most of them are not authenticated. Oak Invest rightly objects

14

to the admissibility of these documents as hearsay, unauthenticated, and confusing.[5] These documents should therefore be excluded. But for purposes of summary judgment, the court will assume the criminal records could be presented in an admissible form at trial, and it will attempt to decipher them.

### i.      Non-driving offenses

First, much of the data reflected by the criminal records sheds no light on Estime's competence as a driver in 2018. Batton argues Oak Invest admitted an applicant's history of non-driving-related crimes is relevant to whether he should be hired and, thus, Oak Invest should be charged with its failure to investigate Estime's non-driving offenses. But Batton mischaracterizes this testimony. While Oak Invest testified Estime's criminal history was relevant to its willingness to rehire Estime, it did not testify Estime's criminal history would reflect on his competency as a driver, which is the question at issue here. (Doc. 69 at 45).

Batton cites an Alabama Supreme Court case to support her argument that Oak Invest should have more thoroughly investigated Estime. *Synergies3 Tec Services, LLC v. Corvo*, 319 So. 3d 1263 (Ala. 2020). *Synergies3*, however, involved an equipment-installation employee, Castro, who routinely entered customers'

---

[5] Oak Invest also argues these documents are irrelevant. As explained below, much of the criminal history is irrelevant, but the documents also contain information about Estime's driving record. Evidence of Estime's driving history is relevant to the question of his competence as a driver.

15

homes and was accused of stealing a diamond from a customer. Some evidence suggested the owner of Synergies3, who hired Castro, knew Castro from a previous employer and knew Castro had been accused of stealing a customer's ring. *Id.* at 1278. Castro also had a criminal history involving theft—a crime that impacted Castro's trustworthiness to enter customers' homes—that should have been detected in a proper background check. *Id.*

*Synergies3* is distinguishable from the facts of this case. A truck driver and an in-home installation technician are substantially different positions. A CMV driver must be competent to drive a commercial vehicle, and so a motor carrier correctly focuses on a potential employee's driving ability. But an installation technician must be trusted to enter customers' homes and interact with those customers outside of his employer's watch, and so an employer should be concerned with a potential employee's broader criminal history.

Batton primarily argues Oak Invest had a duty to more thoroughly investigate Estime, but she does not first explain how Estime's criminal history renders him incompetent to drive a CMV. The court will not consider Estime's irrelevant non-driving criminal history in evaluating whether Batton has presented substantial evidence Estime was an incompetent driver.

### ii.   Driving-related offenses

Estime's driving record reflects the following traffic citations over a 20-year span:

- In March and June 2016, two separate citations for failing to stop at a red light, both of which appear to have been dismissed. (Doc. 69 at 125).

- In February 2013, violations for driving with a suspended license, an unlawful license tag, and failure to register his vehicle, all of which are noted as "adjudication withheld;" also related to this incident, failure to wear a seat belt and a violation reported as "Pers/Inj/Prot/Ins Require," both of which appear to have been dismissed. (Doc. 69 at 78).

- In November 2012, citations for speeding and no tag light, for which adjudication was withheld, as well as operating with a suspended license, which is noted *nolle prosequi.* (Doc. 69 at 132-33).

- In August 2010, a charge of speeding, for which adjudication was withheld. (Doc. 69 at 79).

- In June 2010, a safety belt violation, with no indication of the resolution of the charge. (Doc. 69 at 79).

- Two charges for driving with a suspended license sometime before 2004. (Doc. 69 at 63-64).

- In June 1996, a charge of felony driving with license suspended, for which Estime was convicted. (Doc. 69 at 65).

- Also in June 1996, DUI/manslaughter and DUI/serious bodily injury, for which Estime was convicted. (Doc. 69 at 79).

- A Georgia arrest for driving with a suspended CDL, with no date or details. (Doc. 69 at 145).

Many of these citations, some of which are not moving violations and thus irrelevant to Estime's driving competence, were dismissed or adjudication was withheld. The records reflect Estime was convicted, or potentially convicted, of (1) a 2010 safety belt violation; (2) twice driving without a license sometime before 2004; and (3) DUI/manslaughter and DUI/serious bodily injury in 1996.

A driver need not have a pristine driving record to be found competent. Indeed, courts applying Alabama law have granted summary judgment—based on the plaintiffs' failure to show incompetence—where tortfeasors had driving records like Estime's. For example, in *Craft*, the court found that several traffic violations and a previous collision were not sufficient to establish a driver's incompetence. 107 F. Supp. 3d at 1224. The driver in *Craft* had a speeding ticket, a tag violation, a seatbelt violation, and a failure-to-stop citation, as well as an overweight ticket while driving his CMV. *Id.* Years before, he had been involved in a car accident. *Id.* The court found the diverse circumstances of the various traffic violations undercut a finding of habitual negligence amounting to incompetence. *Id.* at 1225; *see also Lanham v. Gnewuch*, No. 4:13-CV-1358-VEH, 2015 WL 3966480, at *8–9 (N.D. Ala. June 30, 2015) (two preventable accidents in previous two years); *Thedford v. Payne*, 813 So. 2d 905, 912 (Ala. Civ. App. 2001) (one similar accident three months prior); *Pryor v. Brown & Root USA, Inc.*, 674 So. 2d 45, 52 (Ala. 1995) (two speeding tickets and a suspended DUI charge over ten years); *Williams v. Hickox*,

No. 1:17-CV-408-GMB, 2019 WL 2353049, at *7 (M.D. Ala. May 31, 2019) (three violations and one accident, and a DUI more than ten years old).[6]

Here, Estime was convicted of five driving violations over 22 years, only one of which occurred within the 10 years before the collision. Even if the court considers citations, rather than convictions, Estime had six driving incidents (two with multiple charges) and no accidents during the 10 years before the collision. All the driving infractions appear to be minor, and only four involve a moving violation. Estime did not have a perfect driving record, but his citations do not indicate he was an incompetent driver or habitually negligent in 2018 under Alabama law. And, like the driver in *Craft*, the diverse circumstances of these citations weigh against a finding of incompetence.

### iii.   The caution symbols

Batton submits a printout from Oak Invest's GPS program from the day of the accident showing a series of "caution symbols" related to Estime's driving that day. She argues this is further evidence of Estime's incompetent driving. (Doc. 69 at 19,

---

[6] Two other courts in Alabama have held that an older DUI conviction, coupled with a second, more recent DUI, was sufficient to create a genuine issue of material fact about the driver's competence. *See Hobbs v. U.S. Xpress, Inc.*, No. 7:18-CV-02129-LSC, 2021 WL 913398, at *2 (N.D. Ala. Mar. 10, 2021) (two DUI convictions, four accidents in the two years preceding the accident at issue, and an admitted dependency on Xanax and Tramadol); *Edwards v. Valentine*, 926 So. 2d 315, 322 (driver had two DUI convictions, another collision in the preceding three years, an inability to obtain a driver's license, and the driver had admitted he had been using drugs at the time of the accident). But these cases involve concrete evidence of substance abuse, as well as far more recent DUI convictions and collisions.

152). However, Batton does not explain what aspects of, or even whether, Estime's driving triggered these caution symbols. Oak Invest testified the symbols could mean any of several options, such as mechanical issues, hours of service, alerts, speed, or anything else related to the GPS system. (Doc. 69 at 47). The caution symbols are ambiguous at best and are thus not substantial evidence of Estime's incompetence.

An employee's incompetence is an essential element of a claim for negligent/ wanton hiring or supervision. Because Batton cannot prove this essential element, her claim for negligent/wanton hiring or supervision fails. The court therefore declines to address the questions of Oak Invest's knowledge of Estime's alleged incompetence, Oak Invest's background check of Estime, Oak Invest's supervision of Estime's driving, or Oak Invest's post-accident investigation and disciplinary practices.

For the foregoing reasons, there are no genuine issues of material fact, and Oak Invest is entitled to summary judgment on Batton's claims for negligent and/or wanton hiring and supervision.

## C. Count IV – *Respondeat superior*

The parties agree that although Batton can potentially hold Oak Invest liable for Estime's actions under the doctrine of *respondeat superior*, Alabama law does not recognize a stand-alone cause of action for *respondeat superior*. (Doc. 64 at 12; Doc. 69 at 24-25). Batton requests this court clarify that her agreement on this point

is not interpreted as a ruling that *respondeat superior* is inapplicable to this case.

Because Alabama law does not recognize a stand-alone action for *respondeat superior*, Oak Invest is entitled to summary judgment on Count IV.  Nevertheless, the doctrine of *respondeat superior* remains applicable to this action, and Batton may continue to argue Oak Invest is liable for Estime's negligence under the doctrine of *respondeat superior*.

## V.    CONCLUSION

For the foregoing reasons, there are no genuine issues of material fact, and Oak Invest is entitled to summary judgment on Count II – wantonness; Count III – negligent/wanton hiring, training, and supervision; and Count IV – *respondeat superior*. Accordingly, Oak Invest's motion for partial summary judgment is **GRANTED**. (Doc. 64).

**DONE** this 4th day of March, 2022.

STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE